UNITED STATES of America ex rel.
Robert KUBAT, Petitioner,

v.

James THIERET, Warden, Menard Correctional Center, and Neil F. Hartigan, Attorney General, State of Illinois, Respondents.

No. 87 C 8423.

United States District Court,
N.D. Illinois, E.D.

Aug. 8, 1988.

Jonathan Haile, James C. Craven, P.C., Springfield, Ill., Jane Raley, Asst. Defender, Office of the State Appellate Defender, Springfield, Ill., for petitioner.

## MEMORANDUM ORDER

BUA, District Judge.

Attorneys Jonathan Haile, on behalf of the law firm of James C. Craven, P.C., and Jane Raley, on behalf of the Office of the State Appellate Defender, move for an award of attorneys' fees and costs pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. The following is this court's recommendation to the Chief Judge of the Seventh Circuit Court of Appeals for an award of attorneys' fees in excess of the statutory case compensation maximum.

### I.

Section 3006A(a)(2)(B) of the Criminal Justice Act ("CJA") empowers a district court to appoint counsel for financially eligible persons seeking habeas corpus relief under 28 U.S.C. § 2254. Attorneys appointed under the CJA to represent indigent parties in § 2254 actions are compensated at a rate of $60 per hour for time expended in court and $40 per hour for time reasonably expended out of court, unless the Judicial Conference determines that a higher rate of not in excess of $75 is justified. 18 U.S.C. § 3006A(d)(1). However, compensation for representation in a habeas case may not exceed $750 per attorney unless certain prerequisites are met. 18 U.S.C. § 3006A(d)(3). In cases requiring extended or complex representation, the district court may certify a fee greater than the statutory maximum when such payment is necessary to provide fair compensation. 18 U.S.C. §§ 3006A(d)(2), (3). If approved by the chief judge of the circuit, the maximum fee prescribed in § 3006A(d)(2) may be exceeded. 18 U.S.C. § 3006A(d)(3). The legislative history of the CJA makes clear, however, that prescribed fee allowances were not meant to provide "full compensation" but rather were "intended to ease the financial burden on the attorney who offers his services to a defendant as a professional public duty." *See* H.R.Rep. No. 91–1546, S.Rep. 91–790, 91st Cong.2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad.News 3982, 3984.

Volume VII of the *Guide to Judiciary Policies and Procedures*, contains guide-

lines developed by the Judicial Conference for appointment of counsel in criminal cases under the CJA. In Chapter 2, the Judicial Conference emphasizes that although it possesses the power to award hourly rates not in excess of $75, the hourly rates of $60 for in-court time and $40 for out-of-court time "are designated and intended to be maximum rates and to be treated as such." VII *Guide to Judiciary Policies and Procedures*, ch. 2, ¶ 2.22 (May 20, 1988).

The guidelines also offer direction for district courts in determining whether a case for which compensation in excess of the statutory maximum is sought meets the "extended" or "complex" criteria set forth in § 3006A(d)(3). The guidelines provide:

> If the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill, and effort by the lawyer than would normally be required in an average case, the case is "complex." If more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings, the case is extended.

VII *Guide to Judiciary Policies and Procedures*, ch. 2, ¶ 2.22.

Once concluding that a case is extended or complex, § 3006A(d)(3) requires the district court to determine whether excess payment is necessary to provide fair compensation. In defining the criteria to be applied by a district court, the guidelines state:

> The following criteria, among others, may be useful in this regard: responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.

*Id.* Finally, the guidelines provide that a state public defender office may be appointed together with other counsel to represent an indigent individual seeking habeas relief in a death penalty case. *Id.* at ¶ 2.14.

## II.

In June 1980, Robert Kubat was convicted of aggravated kidnapping and murder and sentenced to death in accordance with the Illinois Death Penalty Statute, Ill.Rev. Stat. ch. 38 ¶ 9–1 (1985). After exhausting state appeal and post-conviction procedures, Kubat petitioned this court for a writ of habeas corpus. On March 3, 1988, this court granted a motion for *nunc pro tunc* appointment of Jonathan Haile and Jane Raley as of June 1, 1987, to represent Kubat on his petition for habeas relief. On February 25, 1988, this court granted Kubat's petition in part and vacated his sentence of death.

Both Haile and Raley seek compensation for work performed on Kubat's petition in excess of the normal statutory limit of $750 per attorney. Specifically, Haile, on behalf of James C. Craven, P.C., requests compensation at the maximum allowable rate for 302.40 hours he expended on Kubat's petition. Raley, on behalf of the State Appellate Defender, seeks an award at the maximum rate for 298.45 hours she and an assistant appellate defender devoted to Kubat's habeas action. In addition, Haile requests reimbursement for travel and other expenses allowable under ¶ 2.27 of the guidelines totaling $647.65.

As noted in this court's review of the CJA and its guidelines, before an amount in excess of the statutory maximum can be awarded, the case for which fees are sought must be either extended or complex. A review of the circumstances surrounding Kubat's habeas petition leaves little doubt that counsel's time was spent on a complex case.

Exhaustive and superbly articulated arguments were presented by counsel attacking Kubat's convictions and death sentence. In total, counsel presented nine separate constitutional challenges in over 230 pages

of written argument. Although failing to convince this court Kubat's conviction rested on erroneous identifications or occurred as a result of ineffective assistance of counsel at trial, petitioner's attorneys succeeded in obtaining a writ vacating Kubat's death sentence. *See United States ex rel. Kubat v. Thieret*, 679 F.Supp. 788 (N.D.Ill. 1988).

Despite successive rejections by the Illinois Appellate and Supreme Courts, petitioner's attorneys persuasively argued that Kubat had been prejudiced by deficient performance of counsel at sentencing. This court determined that counsel's nonsensical closing argument, failure to investigate or present mitigating evidence and failure to object to patently erroneous jury instructions deprived Kubat of his Sixth Amendment right to effective assistance of counsel at sentencing. *Id.* at 810–14. Aside from vacating the death sentence on Sixth Amendment grounds, this court found the issuance of the erroneous instruction (directing jurors that a sentence of imprisonment like a sentence of death required a unanimous decision) violated Kubat's right to due process. *Id.* at 814. Although petitioner's attorneys also challenged the validity of the Illinois death penalty statute, the existence of narrower grounds for vacating the death sentence prevented this court from reaching that issue. Nevertheless, this court noted several arguments presented in petitioner's briefs raised serious questions concerning the statute's constitutionality. *Id.* at 815–16.

A simple reading of the 56–page memorandum order issued by this court underscores the variety of significant and unique legal and factual issues raised in Kubat's petition. Little surprise thus exists that petitioner's attorneys were compelled to expend significantly more time, skill and effort preparing Kubat's case than normally required in a typical § 2254 action. As Kubat's case meets the guideline's definition of a "complex" matter, this court must ascertain if an amount in excess of the statutory maximum is necessary to provide fair compensation.

The responsibilities of representing an individual whose life is at stake in the final stages of collateral review impose extraordinary emotional and professional burdens. As Chief Judge Godbold of the Eleventh Circuit recently observed:

Taking a habeas death case is not something most lawyers want to do. In the first place it's hard. It is the most complex area of the law I deal with. In the second place, it's often done on an emergency basis. Third, the death penalty just isn't imposed on people for trivial things. The community is often inflamed. The press is often inflamed. The state trial judge is often inflamed if you question what he did. The trial counsel is often inflamed if you must question what he did. Your client seldom appreciates what you do and may end up accusing you of being ineffective counsel.

ABA Comm. on Legal Aid and Indigent Defendants, Recommendation p. 12 (1988) (pertaining to representation under the CJA in federal habeas corpus death cases). The magnitude and importance of counsel's work in the present case weighs heavily in favor of an award in excess of the statutory maximum.

Similarly, the quality of work performed and the efficiency of petitioner's attorneys indicate a fee greater than that normally provided is necessary to afford fair compensation. As noted earlier, counsel exhibited outstanding skill and expertise in presenting arguments on Kubat's behalf. Counsel's written submissions were the finest ever received by this court in a habeas action. Yet, the number of hours for which compensation is sought is relatively low. A fee petition recently submitted to Judge Plunkett of this district after vacating the death sentence of the petitioner in *Gaines v. Thieret*, 665 F.Supp. 1342 (N.D. Ill.1987), requests approximately $168,000 for over 3,000 hours of attorney time. The February 1987 Spangenberg study on workload in capital cases in Florida sponsored by the American Bar Association determined that the *average* attorney hours spent in federal district court in a habeas case in Florida is 516 hours, and that 2557 hours were spent in one case. ABA Comm. on Legal Aid and Indigent Defendants, Spangenberg Group Report (February

1987). Given the number of unique procedural and substantive issues raised in Kubat's petition, the present fee petition seeking compensation for just over 600 hours of attorney time indicates exceptional efficiency on the part of Kubat's counsel.

In light of the foregoing considerations, this court concludes that an award exceeding the statutory maximum is necessary to provide fair compensation for Kubat's attorneys. This court believes an appropriate fee will be provided by multiplying counsels' hours by the relevant maximum hourly rates set forth in the CJA. Although counsel urge this court to recommend that the CJA's maximum hourly rate be exceeded in the present case, the guidelines instruct that the rates prescribed in the CJA are maximum rates and are to be respected as such. As earlier noted, the CJA is not designed to provide appointed counsel with full compensation for their services. Instead, the fee allowances prescribed are simply intended to relieve part of the financial burdens incurred by performing "a professional public duty." As this court is not persuaded that fair compensation will be denied if statutory rates are not exceeded, this court declines to recommend a fee award based on hourly rates exceeding those specified in the CJA.

### III.

Based on the foregoing discussion, this court recommends that attorney Haile's petition for fees be granted in the amount of $12,126. This figure represents 1.50 hours of in-court time at $60 per hour and 300.90 hours of out-of-court time at $40 per hour. Similarly, this court recommends attorney Raley's petition be granted in the amount of $11,968. This award is based on 1.50 hours of in-court time at $60 per hour and 296.95 hours at the out-of-court rate of $40 per hour. Additionally, this court grants attorney Haile's request for reimbursement of travel and other expenses in the amount of $647.65.

IT IS SO ORDERED.